Citation Nr: 1542426 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 11-07 044 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Hartford, Connecticut


THE ISSUE

Entitlement to service connection for hypertension, to include as due to herbicide exposure.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

M. Espinoza, Associate Counsel


INTRODUCTION

The Veteran served on active duty from May 1968 to May 1971. He also served in the U.S. National Guard, with periods of active duty for training.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Hartford, Connecticut.

This matter was previously before the Board in July 2014. The July 2014 Board decision, in pertinent part, denied the Veteran's claim for entitlement to service connection for hypertension. The Veteran appealed the July 2014 Board decision to the United States Court of Appeals for Veterans Claims (Court). In an Order dated in November 2014, the Court vacated the portion of the Board's July 2014 decision that denied entitlement to service connection for hypertension, and remanded the case to the Board for development consistent with a Joint Motion for Partial Remand (JMPR) of the parties (VA Secretary and the Veteran). Consistent with the November 2014 JMPR, the issue of entitlement to service connection for hypertension, was remanded for further development by the Board in January 2015, in order to obtain a VA examination. In July 2015, the Veteran was afforded a VA examination and a supplemental statement of the case (SSOC) was issued. As the necessary VA examination and SSOC have been obtained, there has been substantial compliance with the January 2015 Board remand directives. Stegall v. West, 11 Vet. App. 268 (1998).

The Veteran testified at a hearing before a Decision Review Officer (DRO) in May 2011 and at a videoconference hearing before the undersigned Veterans Law Judge (VLJ) in January 2013. A transcript of each hearing is of record.



FINDING OF FACT

The most probative evidence does not establish that it is at least as likely as not that hypertension was manifested during the Veteran's active duty service or within a year after separation from service, or that hypertension is otherwise related to service, to include as due to herbicide exposure.


CONCLUSION OF LAW

The criteria for the establishment of service connection for hypertension have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duty to Notify and Assist

Pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). A VA letter issued in September 2009 satisfied the duty to notify provisions with respect to the service connection claims and notified the Veteran of the regulations pertinent to the establishment of an effective date and disability rating.

VA satisfied the duty to assist the Veteran under the VCAA by gathering relevant records. VA has a duty to assist in obtaining the Veteran's service medical records, VA medical records and other relevant records. 38 U.S.C.A. § 5103A(c); 38 C.F.R. § 3.159(c). The Veteran's service treatment records, private treatment records and post service VA treatment records have been obtained and are associated with the claims file. Thus, the Board finds that VA does not have a further duty to obtain records.

Additionally, VA satisfied the duty to assist the Veteran by providing an examination to the Veteran in July 2015. The July 2015 VA examiner interviewed the Veteran, recorded clinical findings, documented the Veteran's subjective complaints and provided a nexus opinion with rationale Thus, the Board concludes that the July 2015 examination report is adequate. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007).

In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) (2014) requires that the VLJ who conducts a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the May 2011 and January 2013 hearings, the issue on appeal was fully explained by DRO and the VLJ, respectively. In addition, each asked questions in order to ascertain the existence of any outstanding potentially available evidence which could substantiate the claim. The Veteran has not suggested any deficiency in the conduct either hearing. Thus, the Board finds that, consistent with Bryant, the hearings complied with the duties set forth in 38 C.F.R. § 3.103(c)(2). 

Based on the foregoing, the Board finds that all relevant facts have been properly and sufficiently developed in this appeal and no further development is required to comply with the duty to assist the Veteran in developing the facts pertinent to the claim. Additionally, the Veteran has not identified any relevant evidence that is outstanding. Thus, VA satisfied its duties to notify and assist the Veteran with his claim. As such, appellate review may proceed without prejudice to the Veteran.


II. Merits of the Claim

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303 (2014). If a condition noted during service is not shown to be chronic, then generally a showing of continuity of symptomatology after service is required for service connection. 38 C.F.R. § 3.303(b). In addition, service connection may also be granted on the basis of a post-service initial diagnosis of a disease, where the physician relates the current condition to the period of service. 38 C.F.R. § 3.303(d).

In Walker v. Shinseki, the Federal Circuit held that the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

In order to establish service connection for the claimed disorder, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999). The requirement of a current disability is satisfied when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim. See McClain v. Nicholson, 21 Vet. App. 319 at 321 (2007).

Additionally, the law provides that a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the Vietnam era shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service. 38 U.S.C.A. § 1116(f) (West 2014); 38 C.F.R. § 3.307 (2014). If a veteran was exposed to an herbicide agent during active military, naval, or air service, certain diseases shall be service connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied. 38 C.F.R. § 3.309(e) (2014). For the purposes of this section, the term ischemic heart disease does not include hypertension or peripheral manifestations of arteriosclerosis such as peripheral vascular disease or stroke, or any other condition that does not qualify within the generally accepted medical definition of ischemic heart disease. 38 C.F.R. § 3.309(e), Note (3).

Service in Vietnam includes service in the waters offshore, or service in other locations if the conditions of service involved duty or visitation in Vietnam. 38 C.F.R. § 3.313(a) (2014). See also Haas v. Peake, 525 F.3d 1168 (Fed. Cir. 2008) (a veteran who never went ashore from the ship on which he served in Vietnam coastal waters was not entitled to presumptive service connection due to alleged herbicide exposure and service in Vietnam will not be presumed based upon the veteran's receipt of a Vietnam Service Medal).

For the purposes of meeting the legal requirements for service-connection, the Court has held that lay evidence is competent and may be sufficient to establish a diagnosis of a condition when 1) a lay person is competent to identify the medical condition; 2) the lay person is reporting a contemporaneous medical diagnosis; or 3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

The medical evidence reflects that the Veteran has a current diagnosis of hypertension. Such was initially noted in September 2007 and January 2008 private treatment records and was noted most recently in an April 2015 VA treatment record. Thus, he has a current disability for VA purposes.

The Veteran asserts that his hypertension is the result of exposure to Agent Orange while serving within the borders of the Republic of Vietnam. As described, the Veteran's service personnel records, including his DD-214, confirm service on the ground in Vietnam from November 1968 to November 1969. Thus, it is presumed that the Veteran was exposed to Agent Orange. See 38 C.F.R. § 3.307.

The Board notes that on August 10, 2012, VA published in the Federal Register Determinations Concerning Illnesses Discussed in National Academy of Sciences Report: Veterans and Agent Orange: Update 2010. See Notice, 77 Fed. Reg. 47924 -28 (Aug. 10, 2012). In that notice, VA discussed NAS findings concerning hypertension and its possible relationship to herbicide exposure. VA noted that NAS had placed hypertension in the "Limited or Suggestive Evidence of Association" category. VA ultimately concluded that the available evidence from the NAS was not sufficient to establish a new presumption of service connection for hypertension in veterans exposed to herbicides. Thus, hypertension is not one of the listed conditions presumed related to herbicide exposure under 38 U.S.C.A. § 1116(a) and 38 C.F.R. § 3.309(e). Therefore, while the Veteran is presumed to have been exposed to an herbicide agent in Vietnam, his hypertension is not presumed to be related to herbicide exposure due to the fact that hypertension is not a listed disease recognized by law as being presumptively related to such exposure. 38 U.S.C.A. § 1116(a)(2)(F); 38 C.F.R. § 3.309(e) . 

However, service connection may be established on a nonpresumptive basis if it is shown that it is at least as likely as not that the Veteran's hypertension was incurred in or aggravated by military service, to include based on presumed exposure to Agent Orange. Combee v. Brown, 34 F.3d 1039, 1044-45 (Fed. Cir. 1994); McCartt v. West, 12 Vet. App. 164, 167 (1999). As noted above, the NAS studies suggest only limited evidence that exposure to Agent Orange in Vietnam is associated with an increased chance of developing high blood pressure in some Veterans. Still, as the NAS studies did suggest a possible connection, albeit limited, an additional VA medical opinion was obtained. In July 2015, a VA examiner opined the Veteran's hypertension was less likely associated with herbicide exposure. The July 2015 VA examiner stated the Veteran had a history of heavy alcohol use which is a major factor of his developing hypertension. The VA examiner further stated that age is another factor, as advancing age is associated with increased blood pressure. The VA examiner reported the Veteran developed hypertension in the year 2000. The VA examiner stated she was unable to link Veteran's hypertension to Agent Orange based on the available medical evidence that supports only a suggestive association between exposure to Agent Orange and hypertension, there has been no conclusive evidence to date. 

Here, while the VA examiner does not cite to the medical literature that provides the basis of her opinion, the opinion is supported by the above noted NAS Update 2010. As noted above, NAS has placed hypertension in the limited or suggestive evidence of association category. NAS has defined this category of association to mean that the evidence suggests an association between exposure to herbicides and the outcome, but a firm conclusion is limited because chance, bias, and confounding could not be ruled out with confidence. See Notice, 77 Fed. Reg. at 47926. The Board does not find that a "limited or suggestive evidence of association" category for hypertension equates to a finding that a relationship as likely as not exists or that the evidence on this matter is in equipoise. Otherwise, the record on appeal does not include any medical evidence relating the Veteran's hypertension to his period of active service or his exposure to herbicides in Vietnam. Furthermore, the Veteran's lay statements in support of his claim on this issue, or as in January 2103 testimony, when he linked hypertension to a psychiatric disability, fall outside the realm of common knowledge or expertise of the Veteran. Jandreau, supra. Additionally, the Board notes the Veteran is not service-connected for a psychiatric disability thus the theory of secondary service connection is inapplicable. 

Furthermore, while hypertension is considered a chronic disease under 38 C.F.R. § 3.309, there has been no indication that it onset during service or manifested within one year of separation. Service treatment records do not indicate any in-service treatment for hypertension nor has the Veteran alleged experiencing symptoms of hypertension during service or within one year of separation. The Veteran testified at his January 2013 videoconference hearing that he was diagnosed with hypertension approximately ten years earlier. As noted above, the July 2015 VA examiner noted the Veteran's hypertension onset in 2000. Further, the Veteran's service treatment records do not reveal any complaints or findings indicative of hypertension. His blood pressure was 122/84 in April 1968 as recorded on his enlistment examination and 119/78 in January 1971 as recorded on his separation examination. As such, the Board finds that the Veteran's hypertension did not manifest within one year of separation from service or onset during service.

In sum, the evidence weighs against a finding that the Veteran's hypertension is related to his military service, to include herbicide exposure. The evidence also weighs against a finding that the Veteran's hypertension was caused by, otherwise began during service or manifested within one year of separation from service. As such, the Veteran's claim for service connection for hypertension must be denied. As the preponderance of the evidence is against the claim, the benefit of the doubt rule does not apply. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v Derwinski, 1 Vet App 49 55-57 (1990). Accordingly, entitlement to service connection for hypertension is denied.


ORDER

Entitlement to service connection for hypertension, to include as due to Agent Orange exposure, is denied.



____________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs